UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ENDERSON LUIS R.P.,

Petitioner,

v.

WARDEN, et al.,

Respondents.

No. 1:26-cv-06914-TLN-JDP

A# 241-867-646

**RELEASE ORDER**

This matter is before the Court on pro se Petitioner Enderson Luis R.P.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) The matter is fully briefed. (ECF Nos. 8, 9.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States on August 20, 2022, after fleeing political persecution in his country of citizenship. (ECF No. 1 at 6; ECF No. 8-1 at 1.) Petitioner encountered immigration authorities at the border and was processed for expedited removal. (ECF No. 8-1 at 2–4.) He was released on parole the following day. (ECF No. 1 at 42–43; ECF No. 8 at 1.)

In the time that followed, Petitioner lived in Utah with his partner, who is a permanent resident of the United States. (ECF No. 1 at 6.) Petitioner applied for asylum and obtained a work permit, social security number, and driver's license. (*Id.* at 5–6, 20–21, 40.) Petitioner owned his own company and paid taxes. (*Id.* at 6, 45–60.) Petitioner is also the sole provider for his 5-year-old daughter. (*Id.*) Petitioner submits several letters of reference from his partner, coworkers, and friends attesting to his good character and strong work ethic. (*Id.* at 25–39.) Petitioner has no criminal history. (ECF No. 8-3 at 2.)

On July 26, 2026, local law enforcement detained Petitioner at his residence. (ECF No. 1 at 5–6.) According to the government's documents, police officers had responded to a call from Petitioner requesting to be removed back to his home country. (ECF No. 8 at 1; ECF No. 8-3 at 2.) According to Petitioner, he had made a call to the police department, but it was to clarify questions about paying a fine. (ECF No. 9 at 1.) After the officers arrived, they asked Petitioner for identifying documents then called immigration authorities and placed him under arrest without an explanation. (ECF No. 1 at 6.) Petitioner was later transferred to a detention center in Utah and eventually moved to the Central Valley Annex Detention Center. (*Id.*)

Petitioner has now been detained for over four months without a hearing before a neutral decisionmaker to determine whether his incarceration is warranted based on danger or flight risk. (*Id.* at 2.) He challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 25–29.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

(citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 17–18.) In opposition, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iv) ("§ 1225(b)(1)") because he is subject to a final expedited order of removal.[2] (ECF No. 8 at 1.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at

[2] Respondents also claim Petitioner has no right to due process under *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). (ECF No. 8 at 2–3.) As this Court and others have repeatedly explained, "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to *admissibility* to the United States." *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023) (emphasis added); *see, e.g.*, *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1092–93 (S.D. Cal. 2025) (finding similarly); *N.M. v. Warden*, No. 2:26-CV-01270-TLN-AC, 2026 WL 1846742, at *4 (E.D. Cal. June 26, 2026) (same). Indeed, the Ninth Circuit has now confirmed *Thuraissigiam*'s lack of applicability to cases like that here, where Petitioner challenges the constitutionality of his detention, not his admissibility. *Padilla v. United States Immigr. & Customs Enf't*, 192 F.4th 894, 917 (9th Cir. 2026) ("In sum, the government's strictly circumscribed detention authority, a pillar of our common law tradition for almost a millennium, stands in contrast to the political branch's 'plenary authority to decide which aliens to admit.' *Thuraissigiam* was an admission, not a detention, case." (citation omitted).)

693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Respondents do not claim Petitioner violated the terms of his release and provide no documentation showing Petitioner's parole was properly revoked. *See Castellon v. Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at *5–6 (E.D. Cal. Aug. 14, 2025) (explaining that a case-by-case analysis is needed to revoke parole). Further, Petitioner has lived in the United States for over four years. In that time, Petitioner worked, developed ties to his community including his permanent resident partner, and pursued his asylum claim. The amount of time Petitioner spent living freely in this country and the life he built in that time create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court rejects Respondents' argument that Petitioner is subject to mandatory detention under § 1225(b)(1). As the government has acknowledged in other cases, § 1226(b)(1) does not

apply to individuals like Petitioner who are paroled into the United States:

> Section 1225(b)(1) allows for the expedited removal of any noncitizen "described in" § 1225(b)(1)(A)(iii)(II), as designated by the Attorney General or Secretary of Homeland Security—that is, any noncitizen not "admitted or paroled into the United States" and "physically present" fewer than two years—who is inadmissible under § 1182(a)(7) at the time of "inspection."

*Florez v. Robbins*, No. 1:25-cv-1897-CSK, 2026 WL 593101, at *2 (E.D. Cal. Mar. 3, 2026) (quoting the government's brief). Petitioner was paroled into the United States by immigration authorities on August 21, 2022, and remained on immigration parole until he was re-detained four years later. While Petitioner may have been subject to mandatory detention under § 1225(b)(1) at the time of his initial arrival, his release on parole now places him outside of the statute's detention authority.

Accordingly, Petitioner is not subject to mandatory detention under § 1225(b)(1). He maintains a clear interest in his continued liberty protected by the Due Process Clause.

B <u>Process Required</u>

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a significant private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport

with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger or a flight risk. Nor do Respondents argue the purposes of Petitioner's parole have been served such that his return to custody is justified. 8 U.S.C. § 1182(5)(A). Rather, Petitioner's asylum case remains ongoing, he has demonstrated ties to his community including his business and permanent resident partner, and he has no criminal history. The risk that Petitioner is being detained without proper justification is therefore exceedingly high.

Finally, the government's interest in detaining Petitioner without notice or a hearing is low, and the effort and cost required to provide him with procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified. He received neither. Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Enderson Luis R.P. (A# 241-867-646) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions and provide a copy of this Order. Respondents must file a **notice certifying compliance** with this provision **within two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. §§ 1225 or 1226, absent compliance with statutory and constitutional protections,

including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

3. Petitioner's application to proceed *in forma pauperis* (ECF No. 2) is GRANTED.

4. Petitioner's motion to appoint counsel (ECF No. 3), motion for temporary restraining order (ECF No. 4), and motion for ruling (ECF No. 9) are DENIED as moot.

5. **The Clerk of Court is directed to serve Central Valley Annex Detention Facility with a copy of this Order.**

6. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE